# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Chaz Minor,
     Petitioner

vs
                           Case No. 1:08cv583
                           (Spiegel, S.J.; Hogan, M.J.)

Warden, Lebanon Correctional
Institution,
     Respondent

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the assistance of counsel. Petitioner alleges as the sole ground for relief that he was denied a fair trial on the basis of five specified instances of prosecutorial misconduct. (*See* Doc. 2, pp. 5, 16-17). This matter is before the Court on petitioner's motion to amend the petition to add an additional prosecutorial misconduct claim (Doc. 23) and motion to stay and hold the case in abeyance pending the exhaustion of state remedies (Doc. 26). Respondent opposes both motions. (Docs. 25, 28).

### Background

On August 26, 2005, the Hamilton County, Ohio, grand jury returned an indictment charging petitioner and co-defendant Larry Lewis, Jr., with the murder of Kevin Berry in violation of Ohio Rev. Code § 2903.02(A); both defendants also were charged with firearm specifications. (Doc. 13, Ex. 1).

Following a joint trial before a jury, petitioner was found guilty as charged. (*Id.,* Ex. 2). Prior to sentencing, petitioner filed a motion for new trial alleging that the evidence supporting the jury's verdict of guilt was insufficient and "contrary to law;" the motion was overruled. (*Id.,* Exs. 3-4). On January 3, 2006, petitioner was sentenced to a prison term of fifteen years to life for the murder offense, to be served consecutively to a three-year term imposed on the merged firearm specifications. (*Id.,* Ex. 6).[1]

With the assistance of new counsel, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District, raising seven claims of error including, as the first assignment of error, the following prosecutorial misconduct claim:

> The trial court erred to the prejudice of appellant, in entering judgment of conviction after a trial, in which egregious prosecutorial misconduct deprived appellant of a fair trial, the trial court committing plain error in permitting such misconduct by the prosecutor to infect the jury trial, in violation of appellant's right to due process of law under the Fourteenth Amendment to the U.S. Constitution and other constitutional rights, through the injection of prejudicial, inadmissible and unconstitutional evidence, and making improper statements and arguments to the jury based upon such "evidence."

(*Id.,* Exs. 7-8).

On January 26, 2007, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the trial court's judgment. (*Id.,* Ex. 10). In its decision, the court provided the following factual summary, which is presumed correct

---

[1]Apparently, petitioner's co-defendant also was convicted and sentenced to the same terms of imprisonment for the murder offense with firearm specification. After unsuccessfully pursuing relief from the state courts in direct appeal and post-conviction proceedings, the co-defendant filed a federal habeas petition with this Court in the case entitled *Larry Lewis v. Warden, Lebanon Correctional Institution,* Case No. 1:08cv144 (Beckwith, S.J.; Hogan, M.J.). On June 30, 2009, the Court adopted a Report and Recommendation to deny the petition with prejudice in that case. (Case No. 1:08cv144, Docs. 11, 13, 14). It appears from the case docket records that the petitioner did not appeal the district court's decision to the United States Court of Appeals for the Sixth Circuit.

under 28 U.S.C. § 2254(e)(1),[2] based on the evidence presented at trial:

> On April 1, 2005, Kevin Berry was shot multiple times while selling drugs in the Fay Apartments complex in Cincinnati. According to the state, Minor and his co-defendant, Larry Lewis, shot Berry because he was selling drugs in their area....

> At trial, Geronimo Johnson testified that, on the night of the shooting, he had seen Berry, Lewis, and a third, unidentified man arguing. He stated that he had then heard gunshots from two different guns. After hearing the shots, Johnson left the apartment complex without discussing what he had seen. Johnson testified that he had not intended to discuss the shooting with police officers, and that he had done so several days later only after being scared by two men while he was reporting to his probation officer. When asked by the prosecutor, Johnson stated that, since he had spoken with the police about the shootings, he had been threatened. On cross-examination, Johnson acknowledged that he had first told police that he saw four people arguing that night–Berry, Lewis, a man named Tremus, and an unidentified man. But at trial, he insisted that Tremus had not been involved in the argument that night.

> Jamita Weaver testified that, on April 1, she had overheard Tremus and Lewis saying that they did not like that Berry had been selling drugs in their area. Weaver stated that, on the evening of April 1, she had approached Berry to buy some marijuana from him. According to Weaver, while she was talking to Berry, Lewis and Minor had walked by. Weaver also stated that Minor had been walking with a limp, which indicated to her that he had a long gun down his pants. According to Weaver, Lewis and Minor had approached her and Berry, and Minor had asked her why she was buying from Berry. Lewis and Minor had begun arguing with Berry about "stealing licks" from them. Weaver saw both

---

[2]Specifically, 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has neither cited nor presented any evidence to rebut the Ohio Court of Appeals' factual findings quoted herein. Therefore, he has not shown that such findings are erroneous.

Lewis and Minor pull out guns. Lewis's was a handgun, and Minor's was a long gun. She stated that Berry had tried to reach for his gun, but had not had time. Before she turned to run away, Weaver had seen Minor shoot Berry.

Weaver testified that, after the shooting, her brother, Dante Graves, and Minor had come to her apartment, but that she refused to let them in. She stated that she had seen Minor give a long gun to Graves after the shooting.

Weaver did not immediately speak with police about what she had seen because she was afraid to come forward. According to Weaver, she decided to speak with the police only after she had gotten into a fight with Graves. Weaver stated that Graves had held a gun to her head. Weaver was angry and decided to speak to the police about Berry's shooting. When asked by the prosecutor, Weaver stated that she was scared for her and her children's safety.

Hasson Graham had been incarcerated with Lewis. He told Detective William Hilbert that Lewis had admitted to shooting Berry and had said that he was going to implicate Minor's brother in the shooting.

Detective Hilbert was contacted by one of Minor's family members and was told that Minor wanted to discuss Berry's shooting with the police. According to Hilbert, Minor stated that he was at his girlfriend's house with his brother, Diamond Johnson, when the shooting occurred.

In support of his alibi, Minor offered the testimony of his girlfriend, Kimyatta Halbert, who testified that, on the night of the shooting, Minor was playing video games with a friend in her apartment. Minor's mother testified that her phone bill indicated that Minor was using his phone at the time that Berry was shot.

(*Id.,* Ex. 10, pp. 2-4).

With the assistance of his appellate counsel, petitioner timely appealed to the Ohio Supreme Court, asserting six propositions of law, which included the following two prosecutorial misconduct claims "argued together:"

**Proposition of Law No. 1:** Egregious prosecutorial misconduct which prejudices the right of the accused to the fundamentally fair trial to which he is constitutionally entitled violates his right to due process of law under the Fourteenth Amendment to the U.S. Constitution ... and requires reversal of his conviction.

**Proposition of Law No. 2:** The purposeful injection by the prosecutor, and admission by the trial court, of prejudicial, inadmissible evidence of threats against State witnesses, not shown to have been made by or at the instance of the accused, is reversible misconduct; the admission of such evidence is plain error, and continual and repetitive injection by the prosecutor of such threats, in opening statement, direct testimony, and final argument, deprives the accused of due process of law under the Fourteenth Amendment to the U.S. Constitution.

(*Id.,* Exs. 11-12).

On June 6, 2007, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 14).

With the assistance of an attorney from the Ohio Public Defender's Office,[3] petitioner next commenced the instant habeas corpus action. In the petition, which was filed on August 28, 2008, petitioner alleges the following ground for relief with supporting facts:

**Ground One:** Prosecutorial misconduct prevented Mr. Minor from having a fair trial in contravention of his due process rights.

**Factual Basis:**

---

[3]In November 2008, a few months after the filing of the instant action, attorney William Gallagher entered an appearance on behalf of petitioner. (Doc. 8). The case docket records reflect that the attorney from the Ohio Public Defender's Office was terminated as petitioner's counsel in this case on November 5, 2008. Subsequently, on August 28, 2009, a "Notice of Substitution and Withdrawal of Counsel" signed by petitioner, Gallagher and petitioner's prior attorney was filed, which memorialized the change in petitioner's representation that had occurred in November 2008. (Doc. 27).

1. The prosecutor, in closing, repeatedly insisted that Mr. Minor and all of the defense witnesses were lying.

2. The prosecutor, in rebuttal to defense's closing, engaged in an ad hominem attack against Mr. Minor's attorney by belittling his closing argument by calling him a "CSI investigator."

3. The prosecutor misrepresented the testimony of the only witness against Mr. Minor by stating that she had custody of her children. Ms. Weaver had testified that children's services had been contacted about her children and that she had given custody of her children to her mother. That information had been introduced to show her bias, since she only testified because she was "mad" regarding children's services being contacted and the resulting fight she had with her brother.

4. As his final words before the court began its jury instructions, the prosecutor explained the standard for proof beyond a reasonable doubt and then unequivocally stated that t[he] State had proven beyond a reasonable doubt that Mr. Minor was responsible for the death of Kevin Berry.

5. The jury had difficulty weighing the credibility of Ms. Weaver against the credibility of the defense witnesses, since they questioned the court multiple times regarding Mr. Minor's case and ultimately received transcripts of Ms. Weaver's testimony along with the testimony of defense and impeachment witnesses.

(Doc. 2, pp. 5, 16-17).

Respondent filed a return of writ in answer to the petition in February 2009. (Doc. 13). In the return of writ, respondent contends that petitioner has waived his ground for relief by failing to raise three of the prosecutorial misconduct claims alleged in the petition to the state courts on direct appeal and by failing to object at trial to the remaining two instances of prosecutorial misconduct, which were reviewed only for "plain error" on direct review. (*Id.*, Brief, pp. 10-12). Respondent also alternatively argues that petitioner is not entitled to habeas relief based on the merits of the two prosecutorial claims that were reviewed for "plain error" on direct appeal. (*Id.*, pp. 13-17).

On July 1, 2009, petitioner's counsel filed a "traverse" in reply to the return of writ, in which it is contended in part that any procedural default committed by petitioner in the state courts should be excused because he has a "legitimate claim of actual innocence." (*See* Doc. 24, pp. 13-17). In support of his claim of "actual innocence," petitioner has attached to his "traverse" brief the affidavits of Dante Graves, the brother of State witness Jamita Weaver; Dale Dorning, a private investigator who interviewed Weaver's and Graves' mother, Vel Barnes, on April 9, 2009; and petitioner's cousin, John Huff, who averred in an affidavit executed on April 6, 2009 that he was with petitioner around the time the murder occurred. (*See id.,* Exs. A-C).

On July 1, 2009, petitioner's counsel also filed a motion to amend the petition to add a new prosecutorial misconduct claim stemming from the State's alleged failure to disclose material evidence favorable to the defense in violation of *Brady v. Maryland,* 373 U.S. 83 (1963). (Doc. 23). Petitioner contends in the motion to amend that he discovered in conversations with Dante Graves in April 2009 that the prosecutor had suppressed material impeachment evidence which would have "destroyed the credibility" of Weaver, who was the only State witness to identify petitioner as a participant in Berry's murder. (Doc. 23, pp. 2 & 3 n.1). In support of his *Brady* claim, petitioner relies on the same affidavits of Graves and Dorning that were attached to his "traverse" brief as demonstrating "actual innocence." (*Id.,* Attachment).

Specifically, in an affidavit executed on June 8, 2009, Graves states that he was not in Cincinnati when Berry was killed, but was in Indianapolis, Indiana visiting a friend until April 4, 2005. Graves asserts that on his return home he "got in a verbal and physical altercation" with Weaver, hitting her in the face and hurting her. Graves further avers in pertinent part:

> My sister is and was very aware that I was good friends with Chaz Minor.
>
> I did not help anyone hide a weapon.
>
> I was not in Ohio from March 17, 2005 until April 4, 2005.
>
> I know Jamita Weaver lied about her knowledge of the shooting of Kevin Berry because she told me so on or about January 4, 2006. She

told me she lied to the police to get back at me and my friend Chaz Minor for my beating her during our confrontation.

I spoke to Cincinnati police and told them Jamita Weaver was lying.

I did not come forward because I was not involved in the offense.

**** 

I was afraid the police would believe I was somehow involved because Ms. Weaver was saying I was involved.

Jamita is not a believable person.

Jamita had falsely accused a man of rape in Springfield Township in the past.

I believe she was prosecuted for filing a false police report.

I believe the police officers I spoke to about this offense and my sister are Cincinnati detectives Luke and Hilbert.

(*Id.*).

In the second affidavit, executed on June 26, 2009, Dale Dorning avers that during his April 2009 interview with Vel Barnes, Barnes made the following statements:

She knew Jamita was claiming Chaz Minor was responsible for shooting Kevin Berry.

She spoke to Cincinnati police, in her residence, about her daughter....

She told Cincinnati police officers (identified as PO Luke and PO Hilbert) her daughter should not be testifying in court because she has lied in the past.

She did not witness the shooting but she did speak to Jamita about it.

8

She said that Jamita told her that she witnessed the shooting but ... could never keep the facts straight when explaining it to her.

She said that in approximately 1998 Jamita reported to Springfield Police that she had been raped. That was a lie. Jamita was prosecuted for filing the false police report.

She said that all of these facts had brought her to the conclusion that my daughter, Jamita Weaver[,] is not a truthful person and could not be trusted to tell the truth about the shooting of Kevin Berry.

(*Id.*).

Respondent has filed a memorandum opposing petitioner's motion to amend, in which it is argued that the motion should be denied because (1) petitioner has not exhausted his new *Brady* claim in the state courts, and (2) in any event, the claim is time-barred. (Doc. 25). Apparently in response to this memorandum filed by respondent on July 22, 2009, petitioner filed another motion on August 10, 2009 requesting that the instant action be stayed and held in abeyance while he exhausts the *Brady* claim in the state courts. (Doc. 26). Respondent also opposes the motion for stay on the ground that petitioner has not satisfied the requirements for a stay as set forth in *Rhines v. Weber,* 544 U.S. 269 (2005). (Doc. 28, p. 2).

## OPINION

### Ruling On Petitioner's Motion To Amend (Doc. 23) Should Be Stayed, But Petitioner's Motion For Stay (Doc. 26) Should Be Granted So That Petitioner Can Exhaust State Remedies Based On His New *Brady* Claim

### A. Motion To Amend (Doc. 23)

As respondent has argued in opposing petitioner's motion to amend, petitioner faces some significant hurdles in seeking at this late date to add a *Brady* claim as a ground for federal habeas relief. First, the addition of the claim triggers an exhaustion issue because petitioner has never pursued relief in the state courts based on such claim. Second, a statute of limitations issue is triggered given that petitioner waited until July 1, 2009, nearly a year after commencing the instant action and nearly two years after his conviction became "final" by the conclusion of direct review on

9

September 4, 2007,[4] to even raise the claim.

Fed. R. Civ. P. 15, which governs pleading amendments in civil cases, is applicable to federal habeas corpus proceedings. *Mayle v. Felix*, 545 U.S. 644, 655 (2005). The rule provides in relevant part that after a responsive pleading is served, a party may amend his pleading "only by leave of court," which "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Rodriguez v. United States*, 286 F.3d 972, 980 (7th Cir.), *cert. denied*, 537 U.S. 938 (2002); *Oleson v. United States*, 27 Fed.Appx. 566, 569 (6th Cir. Dec. 14, 2001) (not published in Federal Reporter). The factors that the court should consider in determining whether to grant leave to amend include "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, *and futility of amendment*." *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998) (quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)) (emphasis added), *cert. denied*, 528 U.S. 842 (1999); *see also Oleson*, 27 Fed.Appx. at 569.

Courts have interpreted Rule 15(a) "as setting forth a 'liberal policy of permitting amendments to ensure the determination of claims on their merits.'" *Oleson*, 27 Fed.Appx. at 569 (quoting *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987), in turn quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)). Under this liberal standard, a party's delay in seeking an amendment is not sufficient reason standing alone to deny the motion to amend. *Id.; see also Coe*, 161 F.3d at 341 ("Delay by itself is not sufficient reason to deny a motion to amend.") (quoting *Brooks*, 39 F.3d at 130). Instead, "[n]otice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Coe*, 161 F.3d at 341-42 (quoting *Brooks*, 39 F.3d at 130).

The United States Court of Appeals for the Sixth Circuit has held that "a motion to amend a habeas corpus action to include 'entirely new arguments' filed after the

---

[4]Under the applicable one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1), the statute often begins to run from the date on which the challenged judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. *See* 28 U.S.C. § 2244(d)(1)(A). In this case, as discussed *infra* p. 12, petitioner's conviction became "final" within the meaning of § 2244(d)(1)(A) on September 4, 2007, when the ninety-day period expired for filing a petition for writ of certiorari to the United States Supreme Court from the Ohio Supreme Court's final decision on June 6, 2007 in the direct review proceedings.

statute of limitations has expired is futile" because "such claims do not relate back to the date the initial habeas petition was filed." *See Guzman v. Houk,* No. 2:04cv194, 2006 WL 1064052, at *6 (S.D. Ohio Apr. 20, 2006) (Marbley, J.) (unpublished) (citing *Oleson,* 27 Fed.Appx. at 570); *see also Wiedbrauk v. Lavigne,* 174 Fed.Appx. 993, 998-1001 (6th Cir. May 17, 2006) (not published in Federal Reporter) (affirming the denial of a habeas petitioner's motion to amend on ground of "futility" because newly asserted time-barred claims were either procedurally defaulted or failed to "relate back" to the original petition), *cert. denied,* 549 U.S. 961 (2006).

Under Fed. R. Civ. P. 15(c), an otherwise time-barred amendment to a pleading is permitted only if it "relates back to the date of the original [timely] pleading." Relation back occurs when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). The Supreme Court has clarified that in the context of federal habeas proceedings governed by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1), an amendment to the petition to add untimely claims is permitted under Fed. R. Civ. P. 15(c)(2) only when the proposed claims "arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Mayle,* 545 U.S. at 657. In other words, "[a]n amended petition ... does not relate back (and thereby escape the ... one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650; *see also Wiedbrauk,* 174 Fed.Appx. at 1001-02.

Here, petitioner asserts for the first time that the State withheld material exculpatory impeachment evidence from the defense in violation of *Brady.* Petitioner's new claim of prosecutorial misconduct under *Brady* is supported by facts differing in both time and type from the prosecutorial misconduct claims set forth in the original petition. Therefore, the undersigned concludes that petitioner's new claim does not relate back to the date of filing of the original petition, as required under Fed. R. Civ. P. 15(c)(2), to overcome any statute-of-limitations bar to review.

Under 28 U.S.C. § 2244(d)(1), a person in custody pursuant to the judgment of a state court must file an application for writ of habeas corpus within one year from the latest of: (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which an impediment to filing created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing a federal habeas

application by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.[5]

Petitioner's new *Brady* claim clearly is time-barred under the limitations provision set forth in § 2244(d)(1)(A). It is well-settled that a petitioner's conviction becomes "final" under this provision when the ninety-day period expires for seeking certiorari review in the United States Supreme Court of the state supreme court's final decision on direct review. *See Lawrence v. Florida,* 549 U.S. 327, 333 (2007) (citing *Clay v. United States,* 537 U.S. 522, 527-28 (2003)); *see also Bronaugh v. Ohio,* 235 F.3d 280, 283 (6th Cir. 2000). Here, the ninety-day period for seeking certiorari review from the Ohio Supreme Court's June 6, 2007 final decision denying petitioner leave to appeal and dismissing the appeal (*see* Doc. 13, Ex. 14) ended on September 4, 2007. Therefore, as respondent has argued (*see* Doc. 25, pp. 4-5), if § 2244(d)(1)(A) applies to petitioner's *Brady* claim, petitioner was required to raise it before the one-year limitations period, which commenced on September 5, 2007, expired on September 5, 2008.

Petitioner contends in the motion to amend that his new claim is not time-barred. (Doc. 23, p. 4 & n.1). It is petitioner's position that the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(B) or (D) governs his *Brady* claim. (*Id.*). According to petitioner, under these provisions, the limitations period did not commence until he discovered the factual basis for his claim in a conversation with Dante Graves in April 2009, and that therefore, his motion filed on July 1, 2009 to amend the petition to add the new claim is timely. (*See id.*).

In addition, petitioner alternatively has argued that if the Court should reject this argument and find the new claim is time-barred, any procedural bar to review of his prosecutorial misconduct claims, including his *Brady* claim, should be excused based on a colorable showing of his "actual innocence." (*See* Doc. 24, pp. 13-17). In *Souter v. Jones,* 395 F.3d 577, 599 (6th Cir. 2005), the Sixth Circuit, following *Schlup v. Delo,* 513

---

[5]In addition, under 28 U.S.C. § 2244(d)(2), the running of the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review. Because petitioner did not seek state post-conviction relief or other collateral review before filing the instant action, this provision does not apply to the case-at-hand.

U.S. 298 (1995), held that "equitable tolling of the one-year limitations period based on a credible showing of actual innocence is appropriate." The *Souter* court stated that "where an otherwise time-barred habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying constitutional claims." *Souter*, 395 F.3d at 602. To make the necessary showing, petitioner must support his allegations of constitutional error "with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup*, 513 U.S. at 324.

Turning first to petitioner's contention that § 2244(d)(1)(B) applies to his *Brady* claim, petitioner posits that the State's presentation of and failure to reveal "false testimony," as well as its failure "to comply with the[] ongoing obligations to reveal exculpatory evidence until April 2009" amounts to a state-created impediment within the meaning of that provision. (*See id.* n.1). The same argument was asserted by the petitioner in *Wood v. Spencer,* 487 F.3d 1, 6 (1st Cir.), *cert. denied,* 128 S.Ct. 260 (2007). In that case, the State countered by arguing that § 2244(d)(1)(B) "does not apply to *Brady* claims" because the provision was intended to apply only in cases where "a state directly interferes with a prisoner's ability to file a habeas petition by, say, denying him access to legal materials." *Id.* Recognizing that the State's argument posed a "vexing question" that "cannot easily be dismissed," the court resolved the matter without deciding that issue; instead, the court concluded that "even if section 2244(d)(1)(B) does encompass *Brady* violations," the claim still would be time-barred. *Id.* The court pointed out that both the Tenth and Ninth Circuits have implied that § 2244(d)(1)(B) contains a "diligence requirement" like the one set forth in § 2244(d)(1)(D). *Id.* (citing *Clark v. Oklahoma,* 468 F.3d 711, 714 (10th Cir. 2006), *cert. denied,* 551 U.S. 1149 (2007); *Miller v. Marr,* 141 F.3d 976, 978 (10th Cir.), *cert. denied,* 525 U.S. 891 (1998); and *Roy v. Lampert,* 465 F.3d 964, 972 & n.3 (9th Cir. 2006), *cert. denied,* 549 U.S. 1317 (2007)). However, the court also left that question "for another day," and instead held that under the plain terms of § 2244(d)(1)(B), the petitioner was not "prevented" from filing a federal habeas petition by the State's alleged *Brady* violation because the petitioner "had the power to blunt the effect of any state-created impediment" in that "with the exercise of garden-variety diligence," he could have learned the content of a conversation known to have occurred and thus could have "obliterated the adverse effects of the [State's] nondisclosure." *Id.* at 7.

Here, petitioner has neither alleged nor presented any facts to suggest that the

State did anything to impede him from investigating and discovering the alleged impeachment information from his close friend Dante Graves prior to the expiration of the § 2244(d)(1)(A) statute of limitations on September 5, 2008, or that petitioner acted diligently to discover the information prior to April 2009. Therefore, as in *Wood,* the undersigned is reluctant to find that § 2244(d)(1)(B) governs the *Brady* claim that petitioner belatedly seeks to include at this late juncture as an additional ground for relief.[6]

In support of his contention based on the limitations provision set forth in § 2244(d)(1)(D), petitioner cites the Sixth Circuit's recent decision in *Willis v. Jones,* 329 Fed.Appx. 7 (6th Cir. May 15, 2009) (not published in Federal Reporter). Specifically, in *Willis,* 329 Fed.Appx. at 16-17, the Sixth Circuit held that the petitioner's *Brady* claim was not time-barred, because under § 2244(d)(1)(D), the statute began to run when the petitioner actually discovered the facts underlying his *Brady* claim; the court reasoned that under the facts of that case, petitioner could not have discovered the facts earlier in the exercise of due diligence because he had "no reason to know that the state had not disclosed *Brady* material" and was "entitled to rely on the state's representation that it did not have impeaching evidence in its files."

Here, in contrast to *Willis,* an argument can be made that petitioner, in the exercise of due diligence, should have discovered prior to April 2009, and perhaps even prior to September 4, 2007, the factual predicate of his *Brady* claim. Dante Graves, the purported source of the information giving rise to petitioner's new claim, was petitioner's good friend as far back as April 2005, when the homicide occurred. Yet, it was only after respondent filed the return of writ in the instant case in February 2009, arguing that petitioner has waived the prosecutorial misconduct claims alleged in the petition, that petitioner finally discovered the "new" information now presented both for the purpose of excusing his procedural default and as support for adding a new ground for relief.

---

[6]*See also Boos v. Fabian,* Civ. No. 05-523 (PAM/JSM), 2008 WL 398787, at *5 (D. Minn. Feb. 12, 2008) (unpublished) (holding that § 2244(d)(1)(B) did not apply to prevent the dismissal of the petitioner's *Brady*-related claims on statute of limitations grounds, because the petitioner had "not alleged that the State did anything to prevent him from investigating and discovering [the homicide victim's] reputation and criminal background prior to April 24, 1997," the date the limitations period expired under § 2244(d)(1)(A), and had not "offered any evidence to suggest that he acted diligently to discover this information prior to September 9, 2002," when he actually obtained the information).

The present record does not contain any explanation as to why it took so long for Graves to reveal to his friend (1) that Weaver had admitted to him over three years earlier "on or about January 4, 2006" that she had lied "about her knowledge of the shooting ... to get back at [Graves] and [his friend] Chaz Minor for [Graves'] beating her during [their] confrontation" in April 2005; and (2) that he had informed the investigating Cincinnati police officers, presumably prior to petitioner's December 2005 trial, that Weaver "was lying" and had formerly been prosecuted for filing a false rape charge.

Finally, the undersigned has serious concerns about the evidence submitted in support of petitioner's claim of "actual innocence," as well as his *Brady* claim, given that both affidavits submitted in support of the motion to amend contain multiple levels of hearsay.[7] *Cf. Hutchison v. Bell,* 303 F.3d 720, 743-44 (6th Cir. 2002), *cert. denied,* 539 U.S. 944 (2003). To the extent petitioner contends that the State withheld material impeachment information stemming from Weaver's purported juvenile prosecution in 1998 for filing a false police report,[8] petitioner has not submitted any record of that proceeding to corroborate Graves' and Vel Barnes' hearsay testimony. In any event, as respondent has pointed out in opposing petitioner's motion to amend (*see* Doc. 25, p. 6), a strong argument can be made that if such evidence even exists, under Ohio R. Evid. 609(D), it would not have been admissible at petitioner's trial for the purpose of merely

---

[7]It is noted that petitioner submitted a third affidavit in support of his claim of "actual innocence," which he attached as an exhibit to his "traverse" brief in reply to the return of writ. (*See* Doc. 24, Ex. B). In the affidavit, petitioner's cousin, John Huff, averred that he was playing video games with petitioner in Kimyatta Halbert's apartment around the time of the shooting. (*Id.*). In order to establish a colorable claim of actual innocence sufficient to overcome procedural bar to revew, however, the petitioner must support his allegations of constitutional error with "new reliable evidence ... that was not presented at trial." *See Schlup,* 513 U.S. at 324. The evidence presented by Huff is not "new" to the extent that if indeed Huff was with petitioner in Halbert's apartment when Berry was killed, petitioner would have been well aware from the very beginning that Huff was a potential alibi witness who could corroborate Halbert's trial testimony that petitioner was in her apartment playing video games when the shooting occurred.

[8]As respondent has pointed out (*see* Doc. 25, p. 6), Weaver was 19 years old when she testified at petitioner's trial in December 2005. (*See* Doc. 13, Trial Tr. 431). According to Dorning's affidavit, Weaver's prosecution for filing a false police report occurred when "in approximately 1998," she "lied" to the Springfield police, claiming that she had been raped. (Doc. 23, Attachment). It, therefore, appears clear from the record that Weaver was a juvenile when she was allegedly prosecuted for filing a false charge.

impeaching Weaver's credibility. *Cf. State v. Murray,* No. CA2008-10-125, 2009 WL 1743723, at *1 (Ohio Ct. App. June 22, 2009) (unpublished) (citing *State v. Pirman,* 640 N.E.2d 575, 579 (Ohio Ct. App.), *appeal dismissed,* 638 N.E.2d 88 (Ohio 1994); and *State v. Lukens,* 586 N.E.2d 1099, 1105-06 (Ohio Ct. App. 1990)); *State v. Pennington,* No. 80AP-981, 1981 WL 3675, at *3 (Ohio Ct. App. Dec. 15, 1981) (unpublished) (suggesting that if questions had been asked of an adult witness about his juvenile record, pursuant to Ohio R. Evid. 609(D), the record would not have been admissible unless otherwise allowed by statute); *see also Davis v. Alaska,* 415 U.S. 308, 321 (1974) (in concurring in the decision holding that the "State's policy interest in protecting the confidentiality of a juvenile offender's record" must yield to a defendant's constitutional right to cross-examine an adverse witness on juvenile probation for "bias," Justice Stewart emphasized that "the Court neither holds nor suggests that that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions").

The only remaining allegedly impeaching material contained in Dorning's affidavit is the double-hearsay statement of Vel Barnes, Weaver's and Graves' mother, that she "told Cincinnati police officers ... her daughter should not be testifying in court because she has lied in the past." This conclusory statement does not suggest that material exculpatory information was withheld given that Barnes apparently conceded that she "did not witness the shooting" and only averred that Weaver "couldn't keep the facts straight when explaining [the incident] to her." Graves' statement that he "spoke to Cincinnati police and told them ... Weaver is lying" is more troubling in light of his assertion in his affidavit that Weaver admitted to him "on or about January 4, 2006" that she had "lied to the police to get back at me and my friend Chaz Minor for my beating her." However, the record has not been sufficiently developed to ascertain whether Graves' testimony after the passage of so many years is credible.

Accordingly, in sum, the undersigned concludes that the statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(B) is not applicable to the case-at-hand and that the record has not been adequately developed for the Court to determine when petitioner in the exercise of due diligence could have discovered the factual basis of his *Brady* claim, and, thus, whether or not the claim is time-barred under 28 U.S.C. § 2244(d)(1)(D). In addition, based on the present record, the undersigned has serious concerns about the evidence submitted by petitioner in support of his *Brady* claim, as well as his claim that he has made a colorable showing of his "actual innocence" sufficient to overcome any procedural waiver or statute-of-limitations bars to review. In the absence of a developed record pertaining to these issues, and out of an abundance of caution, the undersigned

is reluctant to rule on petitioner's motion to amend at this juncture and **RECOMMENDS** that the Court stay ruling on the motion until after petitioner has been provided the opportunity to pursue relief and develop the record more fully in the state courts.

### B. Motion For Stay Of The Instant Case (Doc. 26)

An application for a writ of habeas corpus by a state prisoner shall not be granted unless the petitioner has exhausted his state court remedies, there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect petitioner's rights. 28 U.S.C. § 2254(b)(1). A state defendant with federal constitutional claims is required to first fairly present those claims to the state courts for consideration because of the equal obligation of the state courts to protect constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts. *See Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). Under this "fair presentation" requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," which, in Ohio, includes discretionary review in the Ohio Supreme Court. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If the petitioner fails to fairly present his claims through the requisite levels of state appellate review, but still has an avenue open to him in the state courts by which he may present the claims, his petition is subject to dismissal without prejudice for failure to exhaust state remedies. *See* 28 U.S.C. § 2254(c). Although the exhaustion requirement is not jurisdictional, and an application for writ of habeas corpus may be denied on the merits notwithstanding the petitioner's failure to exhaust state remedies, *see* 28 U.S.C. § 2254(b)(2), there is a strong presumption in favor of requiring exhaustion of state remedies. *See Granberry v. Greer,* 481 U.S. 129, 131 (1987). A "mixed" petition containing both unexhausted claims and claims that have been fairly presented to the state courts is subject to dismissal without prejudice on exhaustion grounds. *Rose v. Lundy,* 455 U.S. 509, 510, 522 (1982).

After the enactment in 1996 of the Antiterrorism and Effective Death Penalty Act (AEDPA), which "preserved *Lundy*'s total exhaustion requirement," but also imposed a one-year statute of limitations on the filing of federal habeas petitions, *Rhines v.*

*Weber*, 544 U.S. 269, 275 (2005), some federal courts (including the Sixth Circuit) adopted a "stay-and-abeyance" procedure to ensure habeas review would not be precluded in the class of cases where a timely-filed federal habeas petition was dismissed on exhaustion grounds and petitioner subsequently returned to federal court to present his claims in a renewed petition after exhausting his state remedies only to find that his claims were time-barred. *See, e.g., Griffin v. Rogers*, 308 F.3d 647, 652 & n.1 (6th Cir. 2002); *Palmer v. Carlton*, 276 F.3d 777, 778-81 (6th Cir. 2002).[9]

More recently, in *Rhines*, 544 U.S. at 276, the Supreme Court affirmed that district courts have the discretion to issue stays in habeas cases, but that such discretion is circumscribed to the extent it must "be compatible with AEDPA's purposes." The Court pointed out that one of the AEDPA's purposes is to "reduce delays in the execution of state and federal criminal sentences" based on the "well-recognized interest in the finality of state judgments." *Id.* (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003), and *Duncan v. Walker*, 533 U.S. 167, 179 (2001)). In addition, the AEDPA's statute of limitations tolling provision was intended to "reinforce[] the importance of *Lundy*'s "simple and clear instruction to potential litigants: before you bring any claims in federal court, be sure that you first have taken each one to state court." *Id.* at 276-77 (quoting *Lundy*, 455 U.S. at 520).

The Court went on to determine that:

> Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing

---

[9]This stay-and-abeyance approach was first suggested by Justice Stevens in a concurring opinion joined by Justice Souter in *Duncan v. Walker*, 533 U.S. 167 (2001). In *Duncan*, the Supreme Court held that a federal habeas corpus petition is not an "application for State post-conviction or other collateral review" that serves to toll the one-year limitations period under 28 U.S.C. § 2244(d)(2). In his concurring opinion, Justice Stevens indicated that the equitable powers of the federal court may be employed in such a situation to toll the statute of limitations for "the class of petitioners whose timely filed habeas petitions remain pending in district court past the limitations period, only to be dismissed after the court belatedly realizes that one or more claims have not been exhausted." *Duncan*, 533 U.S. at 184. The justice suggested that the district court either stay the original habeas proceeding until petitioner exhausts his state court remedies or deem the limitations period tolled for the first habeas petition. *Id.* at 182-83.

a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. . . .

For these reasons, stay and abeyance should be available only in limited circumstances.

*Id.* at 277.

The Court held that stay and abeyance "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," and that, "even if a petitioner had good cause for that failure," it would be an abuse of discretion for the court to grant a stay where the unexhausted claims "are plainly meritless" or the "petitioner engages in abusive litigation tactics or intentional delay." *Id.* at 277-78. However, on the other hand, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278.

In this case, both parties agree that to the extent that petitioner now alleges a new ground for relief based on *Brady*, an exhaustion issue is triggered because petitioner never raised the claim to the state courts and the remedies of a state post-conviction petition pursuant to Ohio Rev. Code § 2953.21(A) or a motion for new trial under Ohio R. Crim. P. 33 may be available for petitioner to pursue relief, and possibly even develop a factual record, based on such a claim. (*See* Doc. 25, pp. 1-3; Doc. 26).[10] Although the

---

[10]Although the 180-day deadline set forth in Ohio Rev. Code § 2953.21(A)(2) for filing a post-conviction petition has long since passed, under Ohio Rev. Code § 2953.23, an untimely post-conviction may be entertained as long as (1) "the petitioner shows that [he] was unavoidably prevented from the discovery of the facts upon which [he] must rely to present the claim for relief,"...; *and* (2) "[t]he petitioner shows by clear and convincing evidence that but for constitutional error at trial, no reasonable factfinder would have found [him] guilty of the offense of which [he] was convicted." Moreover, under Ohio R. Crim. P. 33(B), a defendant may file a motion for new trial "on account of newly discovered evidence" after the120-day deadline following the jury's verdict has expired if (1) "it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely," and (2) the new trial motion is filed "within seven days from an order of the court finding he was unavoidably prevented from discovering the evidence within the one hundred twenty day period."

undersigned is unable to determine on the basis of the present record whether petitioner should be permitted to amend the petition to add the unexhausted *Brady* claim as a ground for relief in the instant action, out of an abundance of caution and for the purpose of providing petitioner an opportunity to develop the record in the state courts, the undersigned concludes, as argued by both parties, that the entire petition should be dismissed without prejudice or stayed so that petitioner may first seek relief in the state courts on his new claim.

Here, in opposing petitioner's motion for a stay, respondent argues that the petition should be dismissed rather than stayed because petitioner has not shown "good cause" for his failure to exhaust his *Brady* claim sooner in the state courts or that his *Brady* claim is "potentially meritorious," as required under *Rhines*. (*See* Doc. 28, p. 2). However, as discussed above in addressing petitioner's motion to amend, the record has not been adequately developed for the Court to determine when petitioner could have discovered the facts underlying his *Brady* claim in the exercise of due diligence, or whether the claim is potentially meritorious.

In addition, this case falls within the category of cases for which the "stay-and-abeyance" procedure was adopted. The instant timely-filed habeas petition has been pending in the federal court for over a year without any further action being taken in the state courts. Therefore, if the petition were dismissed without prejudice instead of stayed at this juncture, any subsequent petition filed by petitioner raising the claims alleged herein would be subject to dismissal with prejudice on statute of limitations grounds.

Accordingly, in sum, the Court concludes that, if petitioner ultimately is allowed to amend the petition to add as a ground for relief his claim of prosecutorial misconduct under *Brady*, which has never been presented to or considered by the state courts, the petition would be subject to dismissal without prejudice as a "mixed petition" containing both exhausted and unexhausted claims. Because the record has not been adequately developed to assess whether or not petitioner should be allowed to amend the petition to add the *Brady* claim, and because dismissal of the entire petition without prejudice at this juncture might unreasonably impair petitioner's right to obtain federal review of any of his grounds for habeas relief, it is **RECOMMENDED** that petitioner's motion for stay of the instant proceedings (Doc. 26) be **GRANTED** so that petitioner may pursue relief based on his new *Brady* claim in the possibly available state court post-conviction proceedings discussed above, wherein he may also have the opportunity to develop the record more fully. To ensure that judicial and administrative resources are conserved, it is **FURTHER RECOMMENDED** that the stay take the form of an administrative

stay and that the case be terminated on the Court's active docket.

## IT IS THEREFORE RECOMMENDED THAT:

1. Ruling on petitioner's motion to amend the petition to add a *Brady* claim (Doc. 23) be **STAYED** pending petitioner's exhaustion of his state court remedies with respect to such claim.

2. Petitioner's motion to stay and hold the instant action in abeyance pending the exhaustion of his *Brady* claim in the state courts (Doc. 26) be **GRANTED**. It is further **RECOMMENDED** that petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 2) be administratively **STAYED** and **TERMINATED** on the Court's active docket pending petitioner's exhaustion of his Ohio remedies. The stay should be **CONDITIONED** on: (1) petitioner's filing with the state trial court a post-conviction petition pursuant to Ohio Rev. Code §§ 2953.21 and 2953.23 and/or a motion for new trial under Ohio R. Crim. P. 33, as discussed herein, within thirty (30) days of the date of filing of any Order adopting this Report and Recommendation; **and** (2) petitioner's filing a motion to reinstate the instant petition on the Court's active docket within thirty (30) days after fully exhausting the possibly available state remedies through the requisite levels of state appellate review. Petitioner should be granted leave to reinstate the case on the Court's active docket when he has exhausted his Ohio remedies based on a showing that he has complied with the conditions of the stay.

3. A certificate of appealability should not issue under the standard set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000), which is applicable to this case involving a recommended stay of the petition so that petitioner can exhaust possibly available state court remedies. *Cf. Porter v. White*, No. 01-CV-72798-DT, 2001 WL 902612, at *3 (E.D. Mich. Aug. 6, 2001) (unpublished) (citing *Henry v. Dep't of Corrections*, 197 F.3d 1361 (11th Cir. 1999) (pre-*Slack* case)) (certificate of appealability denied when case dismissed on exhaustion grounds). *See generally Carmichael v. White*, 163 F.3d 1044, 1045 (8th Cir. 1998); *Christy v. Horn*, 115 F.3d 201, 203-206 (3rd Cir. 1997) (order staying habeas petition to allow exhaustion of state remedies is appealable collateral order). "Jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling that petitioner has failed to exhaust state court remedies and that the case should be stayed (as opposed to dismissed without prejudice)

pending his exhaustion of such remedies.[11]

4. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).


Date: 11/4/09

cbc

Timothy S. Hogan
United States Magistrate Judge

---

[11]Because this Court finds the first prong of the *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated viable constitutional claims for relief in his habeas petition. *See Slack*, 529 U.S. at 484.

Chaz Minor,
     Petitioner

vs.
                         Case No. 1:08cv583
                         (Spiegel, S.J.; Hogan, M.J.)

Warden, Lebanon Correctional
Institution,
     Respondent

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled action. Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).