# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

CHAZ MINOR,

                    Petitioner,           :    Case No. 1:08-cv-583

     - vs -                            District Judge S. Arthur Spiegel
                                        Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional Institution,

                                 :

                    Respondent.

---

# REPORT AND RECOMMENDATIONS

---

This habeas corpus case is before the Court on Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. No. 40).  On the Court's Order (Doc. No. 41), Respondent has filed an Amended Answer (Doc. No. 43) and Petitioner has filed an Amended Traverse (Doc. No. 44). The case is accordingly ripe for decision.

**Background Facts:**

On direct appeal from the conviction in this case, the First District Court of Appeals found relevant background facts from the trial testimony as follows:

> [*P2] On April 1, 2005, Kevin Berry was shot multiple times while selling drugs in the Fay Apartments complex in Cincinnati. According to the state, Minor and his co-defendant, Larry Lewis, shot Berry because he was selling drugs in their area. Minor and Lewis were indicted for murder with firearm specifications. The case was tried before a jury.
>
> [*P3] At trial, Geronimo Johnson testified that, on the night of the

shooting, he had seen Berry, Lewis, and a third, unidentified man arguing. He stated that he had then heard gunshots from two different guns. After hearing the shots, Johnson left the apartment complex without discussing what he had seen. Johnson testified that he had not intended to discuss the shooting with police officers, and that he had done so several days later only after being scared by two men while he was reporting to his probation officer. When asked by the prosecutor, Johnson stated that, since he had spoken with the police about the shootings, he had been threatened. On cross-examination, Johnson acknowledged that he had first told police that he saw four people arguing that night--Berry, Lewis, a man named Tremus, and an unidentified man. But at trial, he insisted that Tremus had not been involved in the argument that night.

[*P4] Jamita Weaver testified that, on April 1, she had overheard Tremus and Lewis saying that they did not like that Berry had been selling drugs in their area. Weaver stated that, on the evening of April 1, she had approached Berry to buy some marijuana from him. According to Weaver, while she was talking to Berry, Lewis and Minor had walked by. Weaver also stated that Minor had been walking with a limp, which indicated to her that he had a long gun down his pants. According to Weaver, Lewis and Minor had approached her and Berry, and Minor had asked her why she was buying from Berry. Lewis and Minor had begun arguing with Berry about "stealing licks" from them. Weaver saw both Lewis and Minor pull out guns. Lewis's was a handgun, and Minor's was a long gun. She stated that Berry had tried to reach for his gun, but had not had time. Before she turned to run away, Weaver had seen Minor shoot Berry.

[*P5] Weaver testified that, after the shooting, her brother, Dante Graves, and Minor had come to her apartment, but that she had refused to let them in. She stated that she had seen Minor give a long gun to Graves after the shooting.

[*P6] Weaver did not immediately speak with police about what she had seen because she was afraid to come forward. According to Weaver, she decided to speak with the police only after she had gotten into a fight with Graves. Weaver stated that Graves had held a gun to her head. Weaver was angry and decided to speak to the police about Berry's shooting. When asked by the prosecutor, Weaver stated that she was scared for her and her children's safety.

[*P7] Hasson Graham had been incarcerated with Lewis. He told Detective William Hilbert that Lewis had admitted to shooting

2

Berry and had said that he was going to implicate Minor's brother in the shooting.

[*P8] Detective Hilbert was contacted by one of Minor's family members and was told that Minor wanted to discuss Berry's shooting with the police. According to Hilbert, Minor stated that he was at his girlfriend's house with his brother, Diamond Johnson, when the shooting occurred.

[*P9] In support of his alibi, Minor offered the testimony of his girlfriend, Kimyatta Halbert, who testified that, on the night of the shooting, Minor was playing video games with a friend in her apartment. Minor's mother testified that her phone bill indicated that Minor was using his phone at the time that Berry was shot.

*State v. Minor*, 2007-Ohio-312, 2007 Ohio App. LEXIS 287 (1st Dist. Jan. 26, 2007).


**Procedural History**


Minor was indicted by the Hamilton County Grand Jury on August 26, 2005, on one count of murder with four firearm specifications.  He was convicted of the murder and two specifications and sentenced to fifteen years to life with three years consecutive for the firearm specification.  He appealed to the First District Court of Appeals, pleading seven assignments of error, but the conviction was affirmed.  *State v. Minor*, *supra*.  The Ohio Supreme Court declined jurisdiction over a further appeal on June 6, 2007.  *State v. Minor*, 114 Ohio St. 3d 1412 (2007).

On August 28, 2008, Minor filed his original Petition for Writ of Habeas Corpus in this Court, pleading the following single ground for relief:

**Ground One:** Prosecutorial misconduct prevented Mr. Minor from having a fair trial in contravention of his due process rights.

**Factual Basis:**
1. The prosecution, in closing, repeatedly stated that Mr. Minor and all of the defense witnesses were lying.

3

2. The prosecutor, in rebuttal to defense's closing, engaged in an *ad hominem* attack against Mr. Minor's attorney by belittling his closing argument by calling him a "CSI Investigator."

3. The prosecutor misrepresented the testimony of the only witness against Mr. Minor by stating that she had custody of her children. Ms. Weaver had testified that children's services had been contacted about her children and that she had given custody of her children to her mother. That information had been introduced to show her bias, since she only testified because she was "mad" regarding children's services being contacted and the resulting fight she had with her brother.

4. As his final words before the court began its jury instructions, the prosecutor explained the standard for proof beyond a reasonable doubt and then unequivocally stated that the State had proven beyond a reasonable doubt that Mr. Minor was responsible for the death of Kevin Berry.

5. The jury had difficulty weighing the credibility of Ms. Weaver against the credibility of the defense witnesses, since they questioned the court multiple times regarding Mr. Minor's case and ultimately received transcripts of Ms. Weaver's testimony along with the testimony of defense and impeachment witnesses.

(Petition, Doc. No. 2.)

On November 5, 2009, Magistrate Judge Timothy Hogan recommended that Minor's Motion to Amend to add a *Brady* claim be postponed until Minor had exhausted that claim in the state courts (Doc. No. 29). Respondent had raised a statute of limitations objection to the amendment and Minor had responded by claiming the benefit of 28 U.S.C. § 2244(d)(1)(B) and (D) and of the actual innocence exception to the statute of limitations recognized in Souter v. Jones, 395 F.3d 577 (6th Cir. 2005)(Doc. No. 23, p. 4, n.1). Judge Hogan recommended rejecting the § 2244(d)(1)(B) starting date for the statute, but recommended staying a decision on the other two limitations-avoidance claims until after exhaustion in the state courts (Report and Recommendation, Doc. No. 29). The Report and Recommendation was adopted by judge Spiegel without objection by either party (Order, Doc. No. 30).

4

After the stay was granted, Minor filed a motion for leave to file a delayed motion for new trial.  In the Motion, Minor asserted both a *Brady* violation in the State's having failed to advise Minor that Jamita Weaver's mother, Vel Barnes, and her brother, Donte Graves, "repeatedly told Cincinnati Police Jamita was not to be trusted (Exhibits A, C, D and F)."  (Doc. No. 32-1, PageID 1269.)  Indeed, it is claimed that "[d]uring separate interviews, both told Cincinnati police detectives [Jennider] Luke and [William] Hilbert Jamita had falsely accused a man of rape in Springfield Township.  After discovering her untruthfulness, Springfield Township prosecuted her for filing a false police report.  (Exhibits A, C and D)."  *Id.*

To establish his diligence in bringing the Motion, Minor asserted that

> Witness affidavits were discovered during the time the habeas petition was pending.  Vel Barnes and Donte Graves were not located until April 2009. . . . The third witness, John Huff, was not located until April 6, 2009 with evidence of Mr. Minor's innocence. (Exhibit B).  The fourth witness, Charay Hicks, was not located until November 19, 2009.  She supplied an affidavit that she witnessed the shooting from 2405 Nottingham while she was babysitting on behalf of Ms. Eugiene Sander and that Chaz Minor was not involved.  She could not come forward until the true shooter, known for being violent and robbing and shooting people, was no longer a threat.  (Exhibit B).

*Id.*

Donte[1] Graves' Affidavit was signed June 8, 2009.  *Id.*  at PageID 1276.  He claims he was not in Ohio from March 17, 2005, until April 4, 2005. *Id.*  Upon returning, he got in a fight with his sister Jamita Weaver and struck her. *Id.*  He claims that on January 4, 2006, Jamita admitted to him that she lied about the shooting to get back at him and his friend, Chaz Minor, for the beating he gave her in April. *Id.*  He swears that at some undisclosed date he spoke to Cincinnati police "and told them Jamita was lying." He claims "I knew Chaz Minor was not involved," but does not say how he knows that, given that he was allegedly in Indianapolis when

---

[1] Spelled this way in his Affidavit.  His mother spells his name "Dante." *Id.*  at PageID 1279.

it happened. *Id.* He did not come forward "because I was not involved in the offense, but "was afraid the police would believe [he] was involved because Ms. Weaver was saying I was involved." *Id.* He states that Jamita had falsely accused a man of rape and he believes she was prosecuted for it. *Id.*

John Huff's Affidavit was signed April 6, 2009 (Doc. No. 32, PageID 1278). He is a cousin of Chaz Minor and claims he was with Minor at the time of the shooting. *Id.* He avers he was at the apartment of Kimyatta Halbert on Nottingham playing video games with Chaz Minor on the day of the shooting. *Id.*

> Just before the shooting, Mr. Minor took a phone call on his cell phone and spoke for what I believe to be a long time. Mr. Minor walked from the second floor of the apartment to the 1st floor while talking on the cell phone. When I heard the shots from outside, I ran downstairs to the first floor of the apartment. I immediately saw Mr. Minor in the apartment. It is impossible for Mr. Minor to have shot anyone and gotten back into the apartment before I got down to the first floor.

*Id.* Although this testimony would have supported Minor's alibi, Huff did not come forward because he "was wanted on an unrelated felony matter." *Id.* Both Minor and Diamond Johnson are cousins of Huff. *Id.* At some undisclosed time, Johnson admitted to Huff that he is the person who shot Kevin Berry. *Id.*

Vel Barnes' Affidavit is dated November 20, 2009, but is not notarized (Doc. No. 32-1, PageID 1279). Some typed portions of the Affidavit have been stricken and additional portions inserted in handwriting. She claims she told Cincinnati police at some undisclosed time that her daughter is not to be believed because she has lied in the past. *Id.*

Dale Dorning is an investigator with Precision Investigations & Consulting LLC who provided an Affidavit about his April 9, 2009, interview of Vel Barnes. *Id.* at PageID 1280.

6

Charay Hicks Affidavit is dated November 15, 2009 (Doc. No. 32-1, PageID 1281-82). While babysitting on April 1, 2005, at 2405 Nottingham, she claims she heard a loud pop that did not sound like a gunshot.  *Id.*  It drew her to the window and she then saw Diamond Johnson "standing outside of a car with a long gun in his hands."  Another man was with him with a handgun.  She moved away from the window after the first shot, but she heard more shooting afterwards.  *Id.*  When the police arrived, they knocked on the door where she was, but she did not answer.  *Id.*  She knew of Diamond Johnson's reputation for violence and so did not step forward because she feared him.  *Id.*  By the time of her Affidavit, she knew that Diamond Johnson was dead.  *Id.*

The State opposed allowing Minor to file a new trial motion, claiming he had not shown that he was unavoidably prevented from discovering his newly-discovered evidence (Doc. No. 32-2).  The Memorandum was supplemented with Affidavits of Detectives Jennifer Luke and William Hilbert.  Both aver that neither Donte Graves nor Vel Barnes ever told them Jamita Weaver was lying about the Kevin Berry shooting or that she had been prosecuted for filing a false police report (Doc. No. 32-3, PageID 1307-10).  Detective Luke's Affidavit recounts an interview with John Huff with facts significantly different from those in his Affidavit. *Id.*

Judge Martin of the Hamilton County Common Pleas Court denied the Motion summarily.[2]  The First District Court of Appeals affirmed.  *State v. Minor,* Case No. C-120424 (1st Dist. Mar. 27, 2013)(unreported; copy at Doc. No. 32, PageID 1369-70.)  It held:

> To the extent that he sought leave to move for a new trial on the ground of newly discovered evidence, Minor bore the burden of proving by clear and convincing evidence that, within 120 days of the return of the verdict in his case, he did not know of the existence of the proposed ground for a new trial, and that he could not, in the exercise of reasonable diligence, have learned of its

---

[2] The adjudicative portion of the Entry reads in its entirety "The Court, being fully advised and after due consideration, finds said motion not well taken, and overrules the same." (Doc. No. 32-8, PageID 1334.)

existence. *See State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *State v. Hawkins*, 1st Dist. No. C-110291, 2011-0hio-s645, ~ 14. He failed to sustain this burden with respect to the proposed impeachment and alibi evidence, but he succeeded with respect to the proposed exculpatory evidence offered by Charay Hicks.

Nevertheless, we cannot say that Minor was prejudiced. Even if he had been granted leave to seek a new trial based on Hicks's proposed testimony, the common pleas court cannot be said to have abused its discretion in not granting Minor a new trial, because the record does not disclose a strong probability that her testimony would have changed the outcome if a new trial had been granted. See Crim.R. 33(A)(6); *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus (holding that "newly discovered evidence" must, inter alia, "disclose[] a strong probability that it will change the result if a new trial is granted*"); see also State v. Williams,* 43 Ohio St.2d 88, 330 N.E.2d 891 (1975), paragraph two of the syllabus (holding that a ruling on a Crim.R. 33[A][6] motion will not be disturbed on appeal in the absence of an abuse of discretion).

*Id.* The Ohio Supreme Court declined jurisdiction over a subsequent appeal. *State v. Minor*, 136 Ohio St. 3d 1452 (2013).

On August 21, 2013, Minor moved to reopen the case and lift the stay (Doc. No. 32). Judge Spiegel granted that Motion September 12, 2013 (Doc. No. 34). In December 2013 the reference was transferred to the undersigned who granted the Motion to Amend without ruling on Respondent's defenses (Doc. Nos. 37, 38). The amendment adds the following Second Ground for Relief:

**Ground Two**: The trial prosecutors suppressed material exculpatory and impeachment evidence in violation of Minor's right to Due Process and right to a Fair trial as guaranteed by the United States Constitution's Fifth, Sixth and Fourteenth Amendments as recognized by *Brady v. Maryland*, 373 U.S. 83, , 83 S. Ct. 1194 (1963) and its progeny.

**Facts Supporting Ground Two:**

Minor through his counsel filed a Demand for Discovery seeking all criminal records of its witnesses and all required information to which he was entitled under the Constitution and Ohio Criminal Rule 16.

The prosecutor failed to disclose evidence Jamita Weaver was convicted/adjudicated for the offense of Falsification. The prosecutors failed to provide the information Ms. Weaver had falsely accused a man of raping her.

The prosecutor failed to tender information Ms. Weaver's brother and mother had told police Jamita Weaver was not a believable person.

The prosecutor with knowledge of Jamita Weaver's reputation, her family's opinion of her and committing the offenses of falsification took improper advantage of its non disclosure and argued to the jury Jamita Weaver had no reason to lie and was a truthful person.

(Doc. No. 40, PageID 1441-42.)

# Analysis

## Ground One:  Prosecutorial Misconduct in Closing Argument

In his First Ground for Relief, Minor asserts the prosecutor committed four acts of misconduct in closing argument, set forth in four separate paragraphs of the supporting facts.[3] Respondent asserts all four of these sub-claims are procedurally defaulted, the first two by failure to object at trial and the latter two by failure to raise them on appeal (Amended Return, Doc. No. 43, PageID 1462-66).  Minor's Amended Traverse does not advert at all to this defense or even to the First Ground for Relief.

---

[3] Paragraph 5 of the supporting facts purports to prove jury confusion and does not set forth a separate instance of asserted misconduct.  In the Amended Petition, these sub-claims are set forth in unnumbered paragraphs (Doc. No. 40, PageID 1441-42).

Minor's original Traverse quotes the following prosecutorial misconduct assignment of error as raised on direct appeal:

> 1. The trial court erred to the prejudice of appellant, in entering judgment of conviction after a trial in which egregious prosecutorial misconduct deprived appellant of a fair trial, the trial court committed plain error in permitting such misconduct by the prosecutor to infect the jury trial, in violation of appellant's right to due process of law under the Fourteenth Amendment to the U.S. Constitution and other constitutional rights, through the injection of prejudicial, inadmissible and unconstitutional evidence, and making improper statements and arguments to the jury based upon such "evidence."

(Doc. No. 24, PageID 1192.)  He notes that any claim of lack of exhaustion of state court remedies was waived by the Warden's failure to raise that defense. *Id.* at PageID 1195-98. Indeed, the Warden raises no lack of exhaustion claim in the Amended Return.  Minor claims any procedural default on the sub-claims raised in paragraphs 3-5 was caused by ineffective assistance of counsel.  *Id.*  at PageID 1198-1200.  As to the sub-claims raised in the first two paragraphs, he contends there is no procedural default because the last state court to render an explained judgment in the case did not enforce any default against him.  *Id.*  at PageID 1200-01. Alternatively, he argues any default is excused by the ineffective assistance of trial counsel in not objecting. *Id.*  at PageID 1201-03.  Finally, he asserts that his actual innocence excuses any procedural default that may have been committed.  *Id.*  at PageID 1203-07.

The First District Court of Appeals decided Minor's prosecutorial misconduct claim as follows:

> **[*P13]** To determine whether a prosecutor's remarks at trial constituted misconduct, we must determine (1) whether the remarks were improper, and (2) if so, whether the remarks prejudicially affected the accused's substantial rights." *State v. Grimes*, 1st Dist. No. C-030922, 2004 Ohio 203 at ¶ 18. Because Minor did not object to the testimony about the threats or the

comments made about the witnesses or counsel, our review is limited to a determination of whether the prosecutor's conduct amounted to plain error.  Crim. R. 52(B).

**[*P14]** Minor urges us to follow our decision in *State v. Grimes.* In that case, the state presented evidence that the defendant's family had attempted to prevent witnesses from testifying against Grimes by threatening and intimidating them. During his closing argument, the prosecutor urged the jury to "send a message loud and clear back to the hood that this city is not going to tolerate this violence" Grimes, supra, at ¶ 21 and "that the threats are not going to work." *Id.* at ¶ 25 This court concluded that the prosecutor's statements improperly appealed to the jury's sympathy and urged the jury to use its verdict to send a message, regardless of Grimes's guilt. But because the trial court had given a curative instruction and because the evidence of Grimes's guilt was overwhelming, we affirmed his conviction. *Id.* at ¶ 35.

**[*P15]** Unlike the prosecutor in *Grimes*, the prosecutor in the case before us did not improperly appeal to the jury's sympathy. Rather, evidence of the threats was used to explain why the witnesses had not come forward sooner. In *Grimes*, we acknowledged that such use of evidence of threats was not improper. *Id.* at ¶ 56. We conclude that Minor has not demonstrated that the trial court erred when it admitted evidence about the threats or that the prosecutor's comments about the threats were improper.

**[*P16]** Minor next argues that the trial court should not have allowed the testimony about the threats because the testimony was other-act evidence. Evid.R. 404(B) prohibits the admission of evidence of "other crimes, wrongs, or acts * * * to prove the character of a person in order to show that he acted in conformity therewith." But as Minor acknowledges in his appellate brief, the witnesses did not testify that Minor or Lewis was responsible for the threats. Weaver made clear that it was her brother who had threatened her. We conclude that the evidence was not inadmissible under Evid.R. 404(B).

**[*P17]** In addition to his arguments regarding the threat evidence, Minor asserts that other comments made by the prosecutor during his closing argument constituted prosecutorial misconduct. We disagree.

**[*P18]** Minor contends that the prosecutor improperly commented on the credibility of Minor, his father, and Halbert. But the

> prosecutor's comments on the inconsistencies in their testimony were fair comments on the evidence.
>
> **[\*P19]** Minor also argues that the prosecutor improperly denigrated defense counsel. In rebutting defense counsel's argument that had challenged some of the state's evidence, the prosecutor stated, "CSI investigator. I guess that's what Mr. Welsh is going to be now." While we agree that the statement was improper, we conclude that it did not prejudicially affect Minor's substantial rights. The first and second assignments of error are overruled.

*State v. Minor, supra.*

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a

habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir.), *cert. denied sub nom, Eley v. Hauk,* __ U.S. __, 131 S.Ct. 822 (2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S. Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Applying *Maupin*, the Court notes that Ohio does have a relevant procedural rule, to wit, that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998).

By conducting only plain error analysis of the First Assignment of Error, the First District enforced that rule against Minor.   Reservation of authority to review in exceptional

circumstances for plain error is not sufficient to constitute application of federal law.  *Cooey v. Coyle,* 289 F.3d 882, 897 (6th Cir. 2002); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000).  A state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir.  2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

The Sixth Circuit has repeatedly held Ohio's contemporaneous objection rule is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir.  2012),*citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Nields v.  Bradshaw*, 482 F.3d 442 (6th Cir.  2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005);  *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing  Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).  *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).

Minor claims that the failure of his trial attorney to object constitutes ineffective assistance of trial counsel which will excuse the procedural default.  However, before ineffective assistance of trial counsel can be relied on to show cause for a default, the ineffective assistance claim must itself have been presented to the state courts in the manner required by state law or that claim will itself be defaulted.  *Edwards v. Carpenter,* 529 U.S. 446 (2000).  Since the failure

to object was evident on the face of the direct appeal record, that claim had to be presented on direct appeal or be barred by Ohio's criminal *res judicata* doctrine. *State v. Perry*, 10 Ohio St. 2d 175 (1967).  The *Perry* rule itself has been repeatedly upheld in the Sixth Circuit as an adequate and independent state rule. *White v. Mitchell*, 431 F.3d 517, 527 (6th Cir. 2005), *citing Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000), *cert. denied*, 531 U.S. 1082 (2001); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994); *Van Hook v. Anderson*, 127 F. Supp. 2d 899 (S.D. Ohio 2001).

The sole claim of ineffective assistance of trial counsel made on direct appeal was Assignment of Error Four:  "Appellant was denied his Sixth Amendment right to counsel by the failure of his counsel to object to the use by the State in evidence and arguments with respect to the purported threats against his accuser."  (Quoted at Return of Writ, Doc. No. 43, PageID 1451.)  The court of appeals decided that claim as follows:

> **[*P23]** Minor asserts in his fourth assignment of error that he was deprived of the effective assistance of counsel, because his defense counsel did not object to the evidence and argument about the threats. To prevail on his claim that his counsel was ineffective, Minor must demonstrate that his counsel's performance was deficient and that, absent his counsel's errors, the result of the trial would have been different. *See State v. Bradley* (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373; *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674.  Minor cannot meet the burden of demonstrating deficient performance because the testimony and the argument about the threats were not improper. Had an objection been made, it would have properly been overruled. The fourth assignment of error is not well taken.

*State v. Minor, supra.*  It cannot be ineffective assistance of counsel to fail to make an objection which would not have had merit.  Therefore the conclusion of the First District that there was no ineffective assistance of trial counsel here is not an objectively unreasonable application of *Strickland v. Washington, supra.*  It is therefore entitled to deference under the AEDPA.  There

15

being no excusing cause and prejudice, the enforcement of Minor's procedural default by failing

to contemporaneously object as to the first two claimed instances of prosecutorial misconduct

must be upheld and these two sub-claims dismissed with prejudice.

As to the sub-claims made in paragraphs three and four of the First Ground for Relief,

Respondent asserts they are procedurally defaulted because they were never presented to the

state courts at all.  Petitioner responds by claiming that they were presented, asserting:

> The instances of prosecutorial misconduct set forth in paragraphs
> three through five of the Petition were presented to the state courts
> through the entire direct appeal process. Specifically, ground three
> was address [sic] by issue one in the appellate and supreme courts
> of Ohio, ground four was address by issue one in the appellate and
> supreme courts of Ohio and ground five was addressed by issue
> two in the appellate court and issues three and four in the supreme
> court of Ohio.

(Traverse, Doc. No. 24, PageID 1196.)

Paragraph three accuses the prosecutor of misconduct in misrepresenting the testimony of

Jamita Weaver.  Assignment of Error One says nothing about this subject on its face nor did the

court of appeals mention this allegation in its decision of that Assignment of Error.  The

Magistrate Judge is unable to find any discussion of this claim in Minor's Brief on Appeal (See

Doc. No. 13-5, PageID 118-24).

Similarly, the Second Assignment of Error speaks about evidence of threats made to

witnesses, and not about any statement made by the prosecutor in closing argument relating to

the standard of proof.

To preserve a federal constitutional claim for presentation in habeas corpus, the claim

must be "fairly presented" to the state courts in a way which provides them with an opportunity

to remedy the asserted constitutional violation, including presenting both the legal and factual

basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009). Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

If a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, they are procedurally defaulted. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it). An Ohio App. Rule 26(B) application preserves for habeas review only the ineffective assistance of appellate counsel arguments, not the underlying substantive arguments. *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012), *citing Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001). "The *Lott* court explained that permitting an Ohio prisoner to raise a substantive claim in a Rule 26(B) motion "would eviscerate the continued vitality of the procedural default rule; every procedural default could be avoided, and federal court merits

review guaranteed, by claims that every act giving rise to every procedural default was the result of constitutionally ineffective counsel." *Id.*

A state prisoner ordinarily does not 'fairly present' a federal claim to a state court if that court must read beyond a petition, a brief, or similar papers to find material that will alert it to the presence of such a claim. *Baldwin v. Reese*, 541 U.S. 27 (2004).    A petitioner fairly presents a federal habeas claim to the state courts only if he "asserted both the factual and legal basis for his claim. *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004), *citing McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); and *Picard v. Connor*, 404 U.S. 270, 276, 277-78 (1971).

Although Minor made a prosecutorial misconduct claim in the state courts, it was limited to the claims made in paragraphs one and two of his supporting facts.  The claims made in paragraphs three and four were not fairly presented and are therefore procedurally defaulted.

## Ground Two:  Violation of *Brady v. Maryland*

In his Second Ground for Relief, Minor asserts he was denied his rights to due process and a fair trial when the prosecutor failed to disclose (1) that the State's principal witness, Jamita Weaver, had been adjudicated a juvenile delinquent on a charge of falsification, to wit, that she had falsely accused a man of raping her and (2) that Jamita Weaver's mother and brother did not believe she was a "believable person." (Amended Petition, Doc. No. 40, PageID 1442.)

## Statute of Limitations

The Warden asserts merit consideration of this claim is barred by the one-year statute of

limitations in 28 U.S.C. § 2244 and that the time began to run when Minor's conviction became final (Supplemental Return of Writ, Doc. No. 43, PageID 1480-84). Minor claims that he is entitled to the start date provided in 28 U.S.C. § 2244(d)(1)(D): "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." This was the question on which Magistrate Judge Hogan reserved judgment when recommending a remand:

> Here, in contrast to *Willis [v. Jones,* 329 Fed. Appx. 6 (6th Cir. May 15, 2009)], an argument can be made that petitioner, in the exercise of due diligence, should have discovered prior to April 2009, and perhaps even prior to September 4, 2007, the factual predicate of his *Brady* claim. Dante Graves, the purported source of the information giving rise to petitioner's new claim, was petitioner's good friend as far back as April 2005, when the homicide occurred. Yet, it was only after respondent filed the return of writ in the instant case in February 2009, arguing that petitioner has waived the prosecutorial misconduct claims alleged in the petition, that petitioner finally discovered the "new" information now presented both for the purpose of excusing his procedural default and as support for adding a new ground for relief.

> The present record does not contain any explanation as to why it took so long for Graves to reveal to his friend (1) that Weaver had admitted to him over three years earlier "on or about January 4, 2006" that she had lied "about her knowledge of the shooting ... to get back at [Graves] and [his friend] Chaz Minor for [Graves'] beating her during [their] confrontation" in April 2005; and (2) that he had informed the investigating Cincinnati police officers, presumably prior to petitioner's December 2005 trial, that Weaver "was lying" and had formerly been prosecuted for filing a false rape charge.

> * * *

> In the absence of a developed record pertaining to these issues, and out of an abundance of caution, the undersigned is reluctant to rule on petitioner's motion to amend at this juncture and RECOMMENDS that the Court stay ruling on the motion until after petitioner has been provided the opportunity to pursue relief and develop the record more fully in the state courts.

(Report and Recommendation, Doc. No. 29, PageID 1252-53.)

The record after remand contains virtually no additional evidence on Minor's due diligence in gathering the material that was before this Court in November 2009 with the exception of the Charay Hicks Affidavit. Instead of additional development of the record, Minor submitted to the Hamilton County Common Pleas Court essentially what he had already submitted here. Minor himself offers no proof of what he did to discover the new evidence prior to 2009 and particularly does not explain why he did not speak to Donte Graves as soon as he learned from Jamita Weaver's testimony that she was claiming that Minor and Graves came to her apartment immediately after the shooting and Minor gave the gun to Graves. (Is it possible that Minor knew that Weaver had witnessed the killing and had gone with the gun and his friend Donte to "persuade" Jamita not to talk? By his own admission, Graves was willing to bear his sister over a much less serious matter about a week after the killing.) Likewise, Minor would have known on the day of the shooting that John Huff could allegedly corroborate his alibi, but does not explain why Huff was not approached until four years later. (We learn from Huff's Affidavit that there was an outstanding warrant for his arrest on a felony that has since been cleared up, but we are given none of the details.)

Minor offers the excuse that he is indigent and "has had to rely on the assistance of his family for any help he has received to dates [sic.]." (Amended Traverse, Doc. No. 44, PageID 1500.) He notes that he was represented by appointed counsel at trial "who had no investigator." *Id.* Minor's trial attorney himself comments on the failure to investigate:

> A canvas [sic] by me of the Fay Apartments to locate unknown witnesses to cooperate with the defense would be completely unreasonable, not productive and unlikely. The neighborhood has the reputation of being violent and uncooperative in police investigations. Nothing has ever given me the impression a defense

> lawyer would fare any better than the police in locating witnesses.
> In fact, given that I have no authority, it is my belief residents of
> the area would not even acknowledge my presence let alone speak
> to me.

(Welsh Affidavit, Doc. No. 32-5, PageID 1327.)  Welsh could, of course, have applied for funds

to hire an investigator at the time of trial but did not do so.  Indigence thus does not excuse the

delay, nor does the availability of money to hire an investigator in 2009 explain why witnesses

were willing to talk to an investigator in 2009 but would not have been willing to talk in 2005.

Considering all the circumstances, the Magistrate Judge is not persuaded that Minor had

shown he acted with due diligence in discovering the evidence on which he now relies.  He is

therefore not entitled to the starting date for the statute of limitations provided in 28 U.S.C. §

2244(d)(1)(D).

Minor also claims the benefit of equitable tolling of the statute.  The one-year statute of

limitations in 28 U.S.C. § 2244 is subject to equitable tolling.  *Holland v. Florida*, 560 U.S.  631

(2010). A petitioner is "'entitled to equitable tolling' only if he shows '(1) that he has been

pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way' and

prevented timely filing."  *Ata v. Scutt*, 662 F.3d 736 (6th Cir. 2011), *quoting Holland*, 130 S. Ct.

at 2562, *quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  Because Minor has not

demonstrated due diligence, he is not entitled to equitable tolling of the statute.


**Procedural Default**


The Warden also asserts Minor's *Brady* claim is procedurally defaulted by his failure to

timely present his new trial motion to the Ohio courts (Supplemental Return, Doc. No. 43,

PageID 1485).  As discussed above, analysis of the procedural default defense is governed by the four-step process set forth in *Maupin v. Smith, supra*.  Applying that analysis, the Magistrate Judge concludes Ohio has a relevant procedural rule – a delayed motion for new trial must be supported by clear and convincing evidence that the ground for the new trial could not have been discovered in the exercise of reasonable diligence.  Ohio R. Crim. P. 33(B).  That rule was enforced against Minor in this case by the Ohio courts.  The Warden cites ample authority from this Court holding that this rule is an adequate and independent state ground of decision. (Supplemental Return, Doc. No. 43, PageID 1485, *citing Rigdon v. Ohio Adult Parole Authority*, No. 1:08cv716, 2010 WL 3910236, at *12 (S.D. Ohio July 7, 2010), adopted, 2010 WL 3910230 (S.D. Ohio Oct. 4, 2010); and *Carson v. Hudson*, No. 2:07-cv-00375, 2009 U.S. Dist. LEXIS 1714, at *63 (S.D. Ohio Jan. 5, 2009), adopted, 2009 U.S. Dist. LEXIS 32578 (S.D. Ohio Apr. 14, 2009)). *Moore v. Brunsman,* No. 3:08cv2895, 2010 WL 425055, at *1, 14-15 (N.D. Ohio Jan. 26, 2010), from the Northern District is to the same effect.  Minor cites no law to the contrary.  The Warden has accordingly established that the *Brady* claim is procedurally defaulted.

**Actual Innocence**

To excuse both his procedural defaults and the bar of the statute of limitations, Minor claims he is actually innocent of the killing of which he stands convicted.

In *Souter v*. Jones, 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit held Congress enacted the statute of limitations in 28 U.S.C. § 2244(d)(1) "consistent with the *Schlup* [*v. Delo*] actual innocence exception."  The controlling precedent on this point is now the Supreme Court's

decision in McQuiggin *v. Perkins*, 569 U.S. ___, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013).

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.
>
> * * *
>
> [A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*McQuiggin v. Perkins*, 569 U.S. ___, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019, 1035 (2013).

The *Souter* court also held:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo*, 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy

> eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Id.* at 590.

Minor's evidence of actual innocence offered now but not at trial consists of the Affidavits of John Huff and Charay Hicks.[4]  They do not have "exculpatory scientific evidence" or "critical physical evidence"; instead, they are offered as providing "trustworthy eyewitness accounts."

Huff's testimony is not persuasive new evidence of actual innocence.  It tends to support Minor's alibi that he was playing video games with Huff at the time of the shooting.  Detective Luke's Affidavit, however, indicates that Huff's statement now is inconsistent with the statement he made at the time of the initial investigation.  If Huff was convicted of the felony which he says kept him from coming forward at the time, he would face impeachment on the basis of that conviction.  If he was acquitted, he would face questioning about why he did not come forward at the time to protect a friend from unjust conviction if he was innocent of the felony.  Huff's lay opinion testimony about how fast Minor could have gotten down the stairs is not convincing.  Finally, the other alibi witness was seriously impeached at trial with prior inconsistent statements about where she was at the time of the shooting.

Nor is the Affidavit of Charay Hicks persuasive.  She claims Diamond Johnson was the shooter, but gives no detail about how well she knew him and how she recognized him on the occasion of the shooting.  She was observing from a window from which she turned away after the first shot was fired.  (Forensic evidence was that Berry was killed by bullets fired from two different kinds of weapons.)  We are told nothing about the angle or distance from which she

---

[4] The testimony of Vel Barnes and Donte Graves about the credibility of Jamita Weaver is not in a form which would be admissible in evidence.

allegedly observed the first shot being fired.  She states she did not come forward before because she feared Diamond Johnson who is now dead.  But we are offered no evidence about when Johnson died or when Hicks learned of his death.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Amended Petition be dismissed with prejudice.  Because reasonable jurists could disagree on the persuasiveness of the Hicks Affidavit, Minor should be granted a certificate of appealability on his actual innocence claim.  As to other conclusions in this Report, reasonable jurists would not disagree and Minor should be denied a certificate of appealability on issues other than the actual innocence claim.

March 26, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).